STATE of Missouri, Respondent,

v.

John Steven DAVIS, Appellant.

No. 38001.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 6, 1977.

Motion for Rehearing and/or Transfer
Denied Oct. 11, 1977.

Howard, Singer & Meehan, Raymond Howard, Jr., St. Louis, for appellant.

William F. Arnet, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr. Asst. Circuit Atty., St. Louis, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of rape and the resulting six year sentence. We affirm.

Defendant has raised five points on appeal including insufficiency of the evidence. We examine that question first. The only evidence presented by the State on the issue of the crime itself and defendant's involvement was from the prosecutrix. We state at the outset that her testimony was not so inherently contradictory and unbelievable as to require corroboration. *State v. Gray,* 423 S.W.2d 776 (Mo.1968) [4, 5]. As to certain of her testimony, such as presence and location, there was corroboration in the testimony of defendant and his witnesses. Ms. W., the prosecutrix, was coming home from nurse's aid training. She was walking in the vicinity of Martin Luther King Drive and Marcus in the city of St. Louis at approximately noon. Gathered around a car across the street from her were a group of men, including Lavern Peters, James Beard and defendant. Some of the group were drinking. Ms. W. was acquainted with Peters from her church. Peters crossed the street and grabbed Ms. W. by the arm and said "you are going to suck my dick." Ms. W. protested and a considerable discussion or argument took place between her and Peters, with her constantly requesting that he let her go and his insisting on taking her into a house located nearby. Finally, he forced Ms. W. into a house at 1435 Marcus, the home of defendant. Peters then forced Ms. W. to accompany him to the basement of the house where he began disrobing and told Ms. W. if she did not cooperate he would have all the men from across the street come down the basement and leave her with them. She believed this. He struck her, then grabbed her by the neck and forcefully compelled her to perform fellatio on him. While Ms. W. was engaged in this act, James Beard came into the basement. When Peters had finished with Ms. W., Beard knocked her down, grabbed her by the neck and forced her to perform fellatio on him. While she was engaged in this act with Beard, defendant came into the basement and Ms. W. pulled her head up and saw defendant watching them. Beard became angry, threatened Ms. W., hit her, and forced her head back down upon his penis. Appellant watched Beard and Ms. W. for twenty or thirty minutes. When Beard had finished with prosecutrix, he and Peters left the basement.

When they had left, defendant approached Ms. W. as she lay on a sofa, pulled off her slacks and undergarments and had sexual intercourse with her. Ms. W. said

she did not consent to this act, that she was crying throughout the time she was in the basement, that she did not resist defendant nor specifically refuse to have intercourse with him. When defendant had finished, Peters and Beard returned to the basement and with defendant still present forced Ms. W. to spread her legs while they struck matches "so they could see." Ms. W. was then allowed to put her clothes on and when she went upstairs to get her school books defendant said to her that he did not know she was being forced and if he had known "he would not have allowed it."

Defendant denied being present during the acts of Peters or Beard and denied that he was aware that they had acted with force. He stated he was told by Peters that Ms. W. was in the basement, that he went down to the basement and asked Ms. W., whom he had never previously met, to have sex with him and that she consented. However, he either changed his mind because he was late for work or was unable to perform and therefore had no intercourse with Ms. W. The thrust of defendant's testimony and of his witnesses was that Ms. W. willingly and freely agreed to the sexual activities that occurred in the basement and consented to intercourse with defendant which he did not consummate.

■ The thrust of defendant's challenge to the sufficiency of the evidence is that there is no showing of a lack of consent to defendant's sexual intercourse. Consent to intercourse induced by fear is no consent. *State v. Davis*, 497 S.W.2d 204 (Mo.App. 1973) [4–6]. An array of physical force which overpowers a woman's mind so she does not resist sexual intercourse obviates consent, and the man is guilty of rape. *State v. Garrett*, 494 S.W.2d 336 (Mo. 1973) [7]. A man is guilty of rape of a woman who submits to intercourse through fear of physical violence, even when that fear is caused by one other than the defendant, if the defendant at the time has knowledge that his victim is submitting through such fear. *State v. Gray*, 497 S.W.2d 545 (Mo.App.1973) [4]. It is further obvious that a woman confronted with threatened or

actual sexual abuse by a group of men is less likely to resist each member of the group. A victim in fear of physical violence or emotionally overcome by the prospect of repeated unwanted invasions of her body may well not resist, may consent, or even invite, further invasions simply to terminate the ordeal. In such circumstances a jury may well find a lack of legal consent and consequently rape.

■ We find the evidence here sufficient to support the verdict. The evidence supports a finding that Ms. W. was threatened, struck several times, choked and sodomized twice by Peters and Beard. Defendant was present and observed some of Beard's actions, including violence toward the victim. Her failure to resist or refuse consent to defendant's actions does not, under those circumstances, require a finding that she voluntarily consented to intercourse with defendant. *See State v. Gray, supra,* 497 S.W.2d 548.

■ Davis' next contention is that the Court erred in the verdict-directing instruction by allowing the jury to find guilt upon finding that defendant either acted alone or acted knowingly and with common purpose with another. It is contended that neither of these submissions is supported by evidence. We find both submissions were supported by evidence. There was sufficient evidence upon which the jury could find Peters, Beard and defendant were acting together with a common purpose. Their presence together before the victim was approached by Peters, their entry in seriatim into the basement, the presence of all three in the basement on two different occasions while the victim was being abused, and the use of defendant's house for the attack all support an inference that they were acting in concert. On the other hand, the evidence also supported an inference that the men were not in concert in their actions and that defendant simply took advantage of a fear and emotional distress which he knew Beard had engen-

dered in the victim to satisfy his own lascivious purpose. *State v. Gray, supra*, 497 S.W.2d 549. We find no error in the alternative submission.

Defendant complains that he was unduly restricted in his cross-examination of Ms. W. He points to five occasions on which the Court sustained objections to defendant's cross-examination, either on the ground that the question was repetitious or argumentative. We find the Court's action in each case to have been within its discretion and proper.

■ Defendant also contends the Court erred in permitting the prosecuting witness to testify to "vivid and lurid sexual acts performed prior to and after the alleged crime by persons other than defendant." We find no error. Ms. W's description of the conduct of Peters and Beard was relevant on the question of her consent and of her state of mind when defendant had relations with her, and of defendant's knowledge that she had been placed in fear. Her testimony concerning the match incident was relevant on the question of defendant's participation with Peters and Beard in the events in the basement. That Ms. W.'s testimony was graphic is hardly objectionable as the acts performed upon her were lurid and their description was necessary for the jury to assess her state of mind and defendant's knowledge of that state of mind.

Defendant's last contention is that the Court "made improper comments and asked improper questions, within the hearing of the jury." One incident concerns the Court's questioning of defendant about whether his mother was home at the time the crime was committed and whether defendant had been drinking at the time. The second incident occurred at the end of the testimony of one of defendant's witnesses as follows:

"The Court: Have you been drinking?

A. No, not when I am taking medication.

The Court: All right, you may step down."

■ Neither of these incidents was objected to and they have not been preserved for review. *State v. McCullough*, 411 S.W.2d 79 (Mo.1967). Nor do we find plain error. The first inquiries were conducted with impartiality and do not reflect bias or prejudice toward the defendant. The areas covered clarified matters which had been touched upon but not developed in earlier testimony. The questioning was within the Court's inherent power in the administration of justice. *State v. Cain*, 485 S.W.2d 60 (Mo.1972). The second incident also is not prejudicial on the record before us. Since no objection was made, we are afforded no explanation by the Court why the question was asked. We must presume it was because of something apparent to the Court in the witness' demeanor, which presumably was also apparent to the jury. The answer served to explain such demeanor to the jury and may well have benefited defendant. It would have perhaps been wiser to have made the inquiry outside the hearing of the jury, but we are unable to find manifest injustice to the defendant in the way the matter was handled.

Judgment affirmed.

CLEMENS, P. J., and DOWD, J., concur.