STATE of Missouri, Respondent,

v.

Richard L. PIERSON, Appellant.

No. WD 30922.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Bunch, O'Sullivan, Sandifar & Hill, Wm. F. O'Sullivan, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Philip M. Koppe, Asst. Attys. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The defendant Pierson was convicted by a jury for the forcible rape of the female DM and was sentenced to imprisonment for a term of five years. The defendant contends on appeal that the jury was not properly instructed.

The evidence was that the female DM was in the company of five males, the defendant Pierson and one Mercer among them. The defendant Pierson admitted to the act of sexual conjugation with DM but denies he used force or threat for that accomplishment. There was no evidence that any conduct of the defendant Pierson put DM in fear of harm or that she submitted to ravishment on that account. The offense was given to the jury, rather, on the theory that DM yielded because of the threats of companion Mercer with whom defendant Pierson acted for the common purpose of carnality. The defendant contends that the instruction failed to submit

that at the time of the copulation Pierson knew that DM succumbed to him only because of the threat to her by Mercer. Thus [concludes the argument], the instruction lacked an essential element of offense and was insufficient to establish the criminal responsibility of defendant Pierson.

The evidence, taken most favorably to the determination of guilt, shows: the female DM went to the residence of her male companion, Boyett, on the afternoon of July 25, 1978. She brought a change of clothes in anticipation of a social event with him. Boyett shared the premises with one Coates. Boyett left for a brief employment with a friend, Christopherson. DM remained with Coates and with one Tack, who came by after the departure of the other two. In that interim, five males—the defendant Pierson, Mercer, Hadley, Riley and Miller—came into the house. The defendant Pierson was an acquaintance of the resident Coates and [by his testimony] suggested Coates as a source for marihuana, which the men then fancied. On arrival, Mercer ordered Tack [whom he disliked from an earlier encounter] to "hit it," and Tack left promptly. Coates left minutes later and DM was left in the company of the five males. [DM was not acquainted with any of them but had seen the defendant Pierson once before at that house.] DM started out the door also but was told by Mercer: "Set down, you're not going anywhere.... You are going to go out partying with us." DM sat down but refused the invitation. Mercer grabbed her by the hair, slapped her, and repeated: "You're going with us." Mercer clenched her arm, twisted it behind the back and said: "Let's go." They all went into a white automobile parked outside where DM was placed in the back seat between Mercer and Miller. The defendant Pierson owned the vehicle and assumed the position behind the wheel.

At that time, Boyett and Christopherson returned from work. DM ran to Boyett through a door of the car, still open, and the three returned into the house. DM tearfully told Boyett the men were going to take her out and rape her. The five men followed them into the premises. Mercer again told DM she was going "to party with them." DM again refused. Mercer asked Boyett: "Do you mind if we take her partying with us?" and Boyett answered: "She can go if she wants to." The five left after a few minutes. DM changed her garments in preparation of an evening out with Boyett. As they started to leave, the five men returned in the same vehicle as before. Mercer asked if Boyett was there, but then he recognized Christopherson and, prompted by an old enmity, struck him in the face. Then another of the five, Hadley, took up the attack upon Christopherson, struck him and was about to use a knife, but was restrained by Mercer. The defendant Pierson, and another, on the orders of Mercer, guarded the doors to the house during this episode. Christopherson was rendered bloody. Mercer told Boyett and DM: "Come here, I want you to see this; that's mild to what is going to happen if I catch any heat behind this from the police or anybody." Mercer continued to vaunt his toughness with the remark: "I'm not afraid of anybody; I will whip the police or anybody."

The five men then left with DM. Mercer grabbed her arm and with a twist ordered her to come or he would break her arm. They entered the Pierson car once again and drove to a liquor store where the defendant and Mercer returned with a case of beer and some wine. There the defendant Pierson encountered a man, engaged him in a brawl, and inflicted knife wounds on him. They resumed the car journey, during which Mercer told DM she was going to get "a good lesson tonight" in the performance of the oral sex act. The defendant Pierson drove them to an open field and everyone got out of the car. Mercer ordered DM to remove all her clothing and jewelry. She complied, in tears all the while, and he told her to "let [his] bros do whatever they wanted." The defendant Pierson was the first of them to engage DM. He performed the act of sexual intercourse; his phallus penetrated her generative orifice. DM begged him to stop and repeated: "Please take me home," but to no avail. Miller

next performed the same act; then Riley attempted a sexual act. Mercer then ordered the others to leave, and defendant Pierson drove away. DM was left with Mercer in the open field. Mercer attempted anal sodomy upon DM. She resisted, so he engaged in the normal act of conjugation. Miller returned with a van and he drove them to his residence. Mercer again ravished DM, continuously throughout that journey. At the Miller residence, the assault continued—first by Miller and then by Mercer. DM was then allowed to dress and, at about 2:00 a. m. on July 26, was returned to the Boyett residence.

The evidence of the defendant was different in respects. That evidence portrayed the assembly at the Boyett home as a convivial event, joined in not only by DM, Coates and Tack, but by the five men in company with three other girls. The occasion was a beer and marihuana party for all, DM included. That view of the evidence had it, that the defendant Pierson did not use marihuana. Also that DM acquiesced to the Mercer invitation "to go partying" so long as they returned her before Boyett came back. That scheme was interrupted by the unexpected return of Boyett. The five men left, but returned to determine whether Boyett had marihuana for sale to them. That evidence admitted a scuffle between some of the five and Christopherson. DM, however, went voluntarily with the defendant, Mercer, and the others to the car; she was not threatened, struck or forced. The encounter at the liquor premises, the defendant Pierson explained, was merely a matter of defense against one he thought was armed; the knife he used was that of Mercer, not his own. Once in the open field, DM disrobed at her own initiative and engaged them in sexual acts voluntarily—without threat of harm or force. DM never sobbed or asked the defendant to discontinue the activity.

On review, we assume the evidence most favorably to the determination of guilt and against an extenuation for the defendant.

The cause was submitted under MAI–CR instructions then in effect. The verdict di-rector [Instruction No. 4] was MAI–CR on Forcible Rape as modified by MAI–CR 2.12 on Principals: Active Participants or conspirators.

### Instruction No. 4

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 26, 1978, that defendant inserted his sexual organ into the sexual organ of DM, and

Second, that he did so *against her will and after George Mercer caused her to submit by threats* which caused her to fear physical violence to herself, and

Third, that the defendant acted *either alone or knowingly and with common purpose together with George Mercer in the conduct referred to in the above paragraphs,* then you will find the defendant guilty of rape. [emphasis added]

The verdict director was accompanied by MAI–CR 2.10—Parties: General Responsibility for the Conduct of Others submitted as

### Instruction No. 5

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene or an offense at the time it was committed is alone not sufficient to make him responsible therefore, although his presence may be considered together with all of the evidence in determining his guilt or innocence.

The defendant Pierson contends that Instruction No. 4 was erroneous in particulars. The two-fold assertion comes for the first time on appeal and so engages us, if at all, only for plain error—and then only to prevent a manifest injustice. Rule 30.20; *State v. Holt*, 592 S.W.2d 759, 776[31] (Mo. banc 1980). The defendant contends, first, that Instruction No. 4 authorized the jury to convict on propositions that DM sub-

mitted to Pierson because of threats of harm made by Mercer, but without further requirement that at the time of the sexual act Pierson knew DM yielded for that reason.

Our law allows a determination of guilt for rape where the victim submits through fear of physical violence, even where one other than the defendant causes the fear, if at the time of the sexual act the defendant has knowledge that the victim succumbs through that fear. *State v. Gray*, 497 S.W.2d 545, 549[4] (Mo.App.1973). That is to say, a rape may be the result of a concert of action aided and abetted between perpetrators. *State v. Davis*, 557 S.W.2d 41, 43[1–3] (Mo.App.1977). Thus, where persons act with common purpose for a criminal enterprise, the prosecution need not prove that the defendant personally committed all of acts essential to the offense. *State v. May*, 587 S.W.2d 331, 334[2–5] (Mo.App.1979). The participation in crime may be shown by such circumstances as presence, companionship and conduct attendant to the offense. *State v. Cullen*, 591 S.W.2d 49, 51[4, 5] (Mo.App.1979).

The actual presence of the defendant Pierson from the first intrusion by the five into the Boyett residence when DM, Coates and Tack alone were there until his own carnal act upon DM in the open field was continuous and coincident with that of Mercer. The evidence of the prosecution, which we assume as true, that during that interim Pierson was present when

> Mercer announced purpose to take DM against her will for sexual gratification,
>
> Mercer used physical force to wrest her compliance and compel her into the car on two occasions,
>
> DM refused to submit by words and by physical resistance,
>
> DM wept continuously from the first insistence by Mercer that she submit,
>
> DM fled the car when Boyett returned home,
>
> DM was warned by Mercer after Christopherson was beaten bloody that "that's mild to what is going to happen if I catch

> the heat behind this from the police or anybody,"
>
> the order by Mercer to DM, when once in the open field, in front of the other four men to remove all her clothing and to "let [his] bros do whatever they wanted," her tearful compliance,

allows clear inference that Pierson knew when he then engaged DM in the sexual act that she submitted from fear of Mercer. The willing use by Pierson of his automobile for the enterprise, his ready acquiescence to every Mercer direction, and his eagerness to be the first to ravish DM—notwithstanding her plea to stop and let her return home—all show that he exploited the fear engendered by Mercer for his own criminal purpose. That no word was spoken between Pierson and Mercer does not allay the participation between them; the actions were surrogates as conclusive as words. *State v. Grebe*, 461 S.W.2d 265, 267 (Mo.banc 1970). Thus, the jury could have found that at the time Pierson took carnal advantage of DM, he knew she was instilled with fear of rape by threats and acts of violence upon her by Mercer and that she submitted on that account.

The defendant makes contention that however conclusive the evidence, Instruction No. 4 did not submit the proposition that Pierson knew DM yielded from fear of Mercer so that the conviction rests on an offense not proved. The essential reliance for that argument rests on *State v. Gray*, supra. In that case the court found plain error in a conviction from a verdict director which submitted that the victim succumbed to the use of force of defendant Gray when the only evidence was that the force was used by one Fats, a companion of the defendant. The instruction as framed was not supported by the evidence and the conviction was reversed. A case more exact on principle is *State v. Davis*, 557 S.W.2d 41 (Mo.App.1977). That case reiterates the rationale of *Gray* that a person is guilty of rape where the victim submits from fear engendered by another and the defendant acts with that knowledge. The distinction between *Gray* and *Davis*, however, is that *Davis* submitted [on evidence] that the per-

son who engendered the fear and the person who imposed the sexual conduct upon the victim acted together with a common purpose by instructions [MAI 6.40 as modified by MAI–CR 2.12, we must assume] identical to those formulated into Instruction No. 4, *Gray*, on the other hand, submitted the guilt of the defendant as the *only* agent of the consummated crime.

The defendant Pierson asserts that, however, couched in terms of common participation, Instruction No. 4 nevertheless does not conform to the requirement of *Gray* that the jury find the perpetrator of the sexual act [Pierson] committed that conduct with *knowledge* that the victim [DM] submitted because of a fear engendered by another [Mercer]. The argument contends that paragraph Third:

> that the Defendant acted either alone or knowingly and with common purpose with George Mercer in the conduct referred to in the above paragraphs . . .

both posits a basis for liability not supported by the evidence and is otherwise too general to submit the ultimate issue that DM yielded to Pierson against her will. The defendant reads *the defendant acted either alone or knowingly and with common purpose with George Mercer* as a disjunctive. Thus [to paraphrase the dual contentions], the defendant argues that since there was no evidence Pierson acted to put DM in fear, that part of the submission: *the defendant acted . . . alone* was error. Thus, also, the remainder of that proposition: *the defendant acted knowingly and with common purpose with George Mercer* is too vague to submit to the jury that DM yielded to Pierson from fear of Mercer. In the context of full Instruction No. 4—which submits the one theory of criminal liability: that the carnal act by Pierson upon DM was the consummation of a rape because he then knew that DM yielded only from a fear already instilled by Mercer—paragraph Third renders two distinct but conjunctive propositions: (1) that *the Defendant acted either alone . . . and with common purpose with George Mercer,* (2) *the Defendant acted . . . knowingly and with common purpose with George Mercer.*

An aider and abetter or active participants who act with common purpose incur criminal liability by any form of affirmative advancement of the enterprise. The proof need not show that the defendant personally committed every essential element of the offense in order to convict. *State v. Rollie*, 585 S.W.2d 78, 90[22] (Mo. App.1979); *State v. May*, 587 S.W.2d 331, 334[2–5] (Mo.App.1979). That is to say, that a defendant may act alone and yet with a common purpose—as the first conjunctive of paragraph Third proposes. The criminal act of rape, by the very nature, allows consummation at any instance by the occupation by only a single male phallus of the female orifice. That aspect of paragraph Three submits that Pierson did this alone but with common purpose with George Mercer. The second conjunction of paragraph Third—that Pierson acted knowingly and with common purpose with George Mercer—can be read only together with paragraphs First and Second, as paragraph Third directs be done and as the law otherwise sensibly expects. *State v. Hines*, 581 S.W.2d 109, 111[5, 6] (Mo.App.1979). Those antecedent paragraphs submit the physical act of conjugation by Pierson upon DM against her will with knowledge by Pierson that DM submitted from fear of Mercer. The propositions of Instruction No. 4 are understood, not only as components of that singular submission, but also together with Instruction No. 5 which declares the rule of law that all who *knowingly* act together or encourage another to commit or further an offense act for each of them.

It may be that a less cluttered statement of the essential offense, without the redundancy or ellipsis of Instruction No. 4 as framed, was possible. We conclude, nevertheless, that the instructions as given conveyed a basis for conviction understandable by a lay jury. We review for plain error only. Instruction No. 4 [albeit modified] and Instruction No. 5 are on the models prescribed for submission of the offense under the evidence and so, by the direction

of [the] Rule 20.02(c), to be used "to the exclusion of any other on the same subject." The defendant made no objection to Instruction No. 4 as given or request to modify the submission. The instruction as given was an awkward expression but did not misdirect the law of the case. The defendant suffered no manifest injustice by that means nor did a miscarriage of justice result.

The defendant Pierson contends for plain error from the submission of Instruction No. 6 as well. The defendant requested Instruction No. A, but was refused. That instruction was prefaced by: *If you do not find and believe*, etc., and so was tendered as a converse of the verdict director Instruction No. 4. The sense of the propositions submitted by that tender was that the jury acquit the defendant if they did not find and believe that Pierson performed the sexual act upon DM against her will after he caused her to submit by threats which caused her to fear violence upon herself. It omitted altogether the proposition of the verdict director Instruction No. 4 that DM submitted from and Pierson acted on the fear he knew Mercer had instilled in the victim. It was, as the defendant concedes, an improper converse of the verdict director, but rather posited facts not submitted by Instruction No. 4 nor even supported by the evidence. The court gave Instruction No. 6 instead. That instruction conversed paragraphs First and Second of verdict director Instruction No. 4. The defendant now complains of the failure of the court to converse the element of knowledge [presumably by the inclusion of paragraph Third as well] was plain error also.

■ The tender of Instruction A was properly refused for the reasons given. The court has no duty to submit a converse absent a request, and it is only when the converse relates to the prosecution law of the case that refusal results in error. MAI–CR 3.02, Notes on Use. The tender of converse must correctly declare the law before refusal to submit becomes error. *State v. McWilliams*, 331 S.W. 610, 613[6, 7] (Mo.

1960). The court nevertheless favored the defendant by the submission of Instruction No. 6 so as to allow a converse even without valid request. The defendant was entitled to one converse and no more for each verdict director. *State v. Murphy*, 415 S.W.2d 758, 760[5] (Mo.banc 1967). A converse may be of one or more elements of the prosecution verdict director. MAI–CR 3.04, 3.06 and Notes on Use. That the Instruction No. 6 conversed less than all of the submission of the verdict director, therefore, cannot amount to error—let alone plain error.

The final contention asserts that the evidence by DM that Mercer and Miller raped her and attempted anal sodomy upon her, events after Pierson left their presence, was irrelevant and prejudiced a fair jury verdict. The argument likens the enterprise between Mercer and Pierson to a conspiracy which ended upon the act of rape by Pierson, so that all other evidence thereafter became inadmissible to the offense. The offense charged was not a conspiracy, however, but a rape by Pierson and was tried and submitted as a crime consummated by Pierson according to a common purpose with Mercer. The evidence of the sexual acts by Mercer after Pierson and others left Mercer alone with DM in the open field, not only confirms the common purpose to rape DM, but also is probative on the issue that DM submitted to Pierson from fear of violence from Mercer for any resistance.

■ The defendant argues that the departure from the field by Pierson shows that the criminal enterprise between Mercer and Pierson "terminated by mutual consent at that point." Thus, the sexual assaults upon DM thereafter were irrelevant to the crime alleged against Pierson. An aider and abetter or participant in a crime may detach from the enterprise before consummation in a time and fashion and by words or deeds which show the accomplices that he disapproves of the scheme, so that the crime results from agency other than his own. *State v. Denson*, 574 S.W.2d 445,

448[1] (Mo.App.1979).[1] The removal by Pierson from the open field was not to withdraw from any common purpose with Mercer but merely obedience to order—and was not a detachment from the criminal activity, but to allow Mercer to have DM to himself. That episode was typical of the servile acquiescence Pierson and the others gave every direction by Mercer. The evidence of the continued sexual assault by Mercer and Miller upon DM after Pierson departed, rather, was one aspect of the continuous criminal transaction and thus part of the res gestae. *State v. Torrence*, 519 S.W.2d 360, 361[2] (Mo.App.1975).

The judgment is affirmed.

All concur.

---

1. *Withdrawal* has since been codified as affirmative defense to a criminal charge by § 562.-   041.2(3); MAI–CR 2d 2.16.