STATE of Missouri, Respondent,

v.

William H. JOHNSON, Jr., Appellant.

No. 43192.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 1, 1982.

Motion for Rehearing and/or Transfer
Denied July 16, 1982.

Application to Transfer Denied
Sept. 13, 1982.

Shaw, Howlett & Schwartz, James W. Knappenberger, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of two counts of rape, two counts of sodomy and two counts of kidnapping. The sentences imposed were fifteen years on each of the sex offense counts to run consecutively and eight years on each kidnapping count to run concurrently with the sex offense sentences. We affirm.

In the early morning hours on a Sunday, two young women ran out of gas on Natural Bridge Road in St. Louis County. Defendant and two other young men came by and seeing the young women's plight physically seized them and threw them into the vehicle in which defendant was riding. The women were driven for approximately ten minutes to a field where they were repeatedly raped and forced to perform acts of fellatio by each of the men for approximately an hour and one half. They were then driven to a shack nearby and again each was raped and sodomized by each of the men. During the ordeal at the shack, defendant left to get food and after approximately 30 minutes returned with a relative who also participated in the continuing sexual abuse of the women. During defendant's absence, one of his compatriots obtained a cane from the occupant of the shack and inserted it into the vagina of one of the victims. The women were threatened by being told the men had a gun and were struck on the head and face during the ordeal. From the time the women were first forced into the car until their release, six hours or more elapsed.

Defendant admitted his presence at the scene; admitted sexual intercourse with

one of the victims; denied the intercourse was non-consensual; and stated that the women had agreed to the sexual activity in exchange for two dollars in gas money.

■ Defendant has raised a multitude of issues on appeal. The first is that the submission and conviction of both rape and kidnapping (1) subjected him to double jeopardy; (2) was contrary to Sec. 556.041, RSMo 1978 (limitation on conviction for multiple offenses); and (3) was contrary to Sec. 565.110 RSMo 1978 (kidnapping). These contentions are premised on the conclusion that both offenses arose out of one continuous course of action. This point has been decided in *State v. Smith*, 626 S.W.2d 256 (Mo.App.1981) [3] (a companion case to this one), *State v. Johnson*, 632 S.W.2d 506 (Mo.App.1982) (a companion case to this one), and *State v. Stewart*, 615 S.W.2d 600 (Mo.App.1981) [2], all of which held contrary to defendant's position. Little else need be said other than noting that approval of defendant's contentions would virtually eliminate kidnapping as a separate criminal offense. As we said in *State v. Gorman*, 584 S.W.2d 420 (Mo.App.1979) [11]:

"It is a rare kidnapping that is an end in itself; almost invariably it is the means by which one attempts to facilitate the commission of another crime. We cannot approve any principle which exempts one from prosecution for all crimes he commits because he sees fit to compound or multiply them. Such a principle would inevitably encourage the compounding and, ultimate viciousness of criminal acts."

■ Defendant next challenges the verdict-directing instructions on kidnapping. His contention that the kidnapping statute was not designed to apply to facilitating the commission of a *future* felony, as was the case here and as was submitted by the instruction, is patently frivolous. The same can be said for his argument that the evidence did not support a finding that defendant acted with the purpose of promoting the kidnapping. The evidence is to the contrary. His final attack on these instructions is that the instructions did not properly combine MAI–CR2d 2.12 (Active Participants or Aiders) with the basic kidnapping instruction (MAI–CR2d 19.20.2(1)). This recurring problem, created by certain confusion in MAI–CR2d has been dealt with in *State v. Clark*, 607 S.W.2d 817 (Mo.App. 1980) [5]; *State v. Simpson*, 614 S.W.2d 31 (Mo.App.1981) [3]; and *State v. Hastings*, 628 S.W.2d 678 (Mo.App.1982) [7]. For the reasons set forth therein we find defendant's point without merit.

■ Defendant also contends that four additional instructional errors occurred. The first two involve utilization of the singular rather than the plural when referring to "offense" in the burden of proof instruction (MAI–CR2d 2.20) and "verdict" in the argument of counsel and verdict mechanics instructions (MAI–CR2d 2.68 and MAI–CR2d 2.80). The third involves reversing the prescribed order of the latter two instructions. The fourth challenges the use of the MAI–CR2d 33.01 definition of "consent" as confusing and inaccurate in light of the facts of the case. The giving of MAI–CR2d 2.70 (Verdict Possibilities: One Defendant-Multiple Counts Requiring Separate Verdicts) cures any error which may have been involved in failing to utilize the plurals of "offense" and "verdict." *State v. Rapheld*, 587 S.W.2d 881 (Mo.App.1979) [28]; *State v. Ross*, 523 S.W.2d 841 (Mo. App.1975) [3, 4]. The reversal of the order of the instructions created no likelihood of confusion or of misleading the jury under the circumstances here. *State v. Billingsley*, 534 S.W.2d 484 (Mo.App.1975) [2, 3, 4]; *State v. Ward*, 588 S.W.2d 728 (Mo.App. 1979) [5, 6]. The definition of "consent" was that prescribed by MAI–CR2d and was not erroneous.

■ Defendant next challenges the admission of certain statements, made during the course of the crimes by unidentified participants therein, on the ground that the statements constituted inadmissible hearsay. The statements complained of [1] were

---

1. Typical of these statements were: "Stop that bitch," "Shut up, don't say a word," and "We have got a gun in the glove compartment and we will shoot you."

not hearsay. In order for an out-of-court statement to be hearsay, it must be offered "as an assertion to show the truth of matters asserted therein." C. McCormick, Handbook of the Law of Evidence, § 246 (2d ed. 1972). These statements were offered only to establish that they were said, not that they were true. Their admissibility is determined by their relevancy. As something said at the time and place of the crime, they were relevant as part of the *res gestae*,[2] particularly as they related to the forcible nature of the participants' conduct. *State v. Talbert*, 454 S.W.2d 1 (Mo.1970) [2–4].

■ In a related contention defendant premises error upon the admission of testimony of the cane incident and of the cane itself. Both matters were relevant to the question of consent and the victims' fear of violence.

"If two or more persons engage in the commission of a crime or crimes, proof of all relevant facts is proper. Where two crimes are committed, under such circumstances as to constitute one continuous transaction in the accomplishment of a common design, and the facts are so interrelated that the crimes are concurrent, evidence of all criminal acts that occur during such time span are admissible, as otherwise, a connected and intelligible statement of the occurrence could not easily be made, or understood." *State v. Rezabek*, 584 S.W.2d 430 (Mo.App.1979) [2, 3].

This is particularly true in gang rape cases where the conduct of each individual attacker or participant helps to establish the circumstances under which the victim yielded to the depravity visited upon her. *State v. Mercer*, 611 S.W.2d 392 (Mo.App. 1981) [6]; *State v. Hastings, supra*, [1, 2]; *State v. Davis*, 557 S.W.2d 41 (Mo.App.1977) [1–3]. That defendant was not present at the scene during the cane incident does not negate the relevancy of the conduct. *State v. Pierson*, 610 S.W.2d 86 (Mo.App.1980) [8–12]; *State v. Davis, supra*. This is especially so here because defendant thereafter returned and the sexual assaults continued after his return.

■ Defendant also challenges testimony of the victims that one had dropped out of beauty college after this incident and the other had moved to Minnesota. The testimony was at least minimally relevant to refute the defendant's prior recorded statement that the sexual activities were consensual. It was inferable from the testimony that these major voluntary changes in the victim's lives were made because of the sexual activities testified to and that such changes would not have been made if the activities had been consented to. The trial court has broad discretion on matters of relevancy and materiality. *State v. Wickizer*, 583 S.W.2d 519 (Mo banc 1979) [9–11]. We find no abuse of discretion here. The same finding also applies to the admission into evidence of a non-operational gun found in the glove compartment of the car in which the victims were abducted and the picture of that glove compartment with the gun therein. Neither victim had seen a gun but participants in the abduction had said there was one "in the glove compartment" as part of the threats and force utilized to effectuate the abduction. While the presence of a gun was unnecessary to establish the forcible nature of the abduction, the fact that there was in fact a gun tended to corroborate the victim's statements concerning the circumstances of the abduction. The presence of the gun was therefore relevant and its admission was not error.

■ We also find without merit defendant's attack on certain other physical evidence admitted into evidence, testimony adduced during cross-examination of defendant of a prior sentence on a robbery conviction, and a question concerning defendant's prior contacts with the resident of the shack to which the victims were taken. All of the

---

**2.** *Res gestae* refers both to an exception to the hearsay rule and to a general rule of relevancy of evidence. *See* 22A C.J.S. Criminal Law § 662(1). It is here used in the latter context.

objections to these matters raised issues within the discretion of the trial court and we find no abuse of that discretion.

Defendant also premises error upon the failure of the trial court to declare a mistrial following the playing of a tape recorded statement made by him following his arrest and after *Miranda* warnings. The tape contained the following statements:

"If they would have screamed like that when we first seen them, I wouldn't have even touched the girls. Didn't want no more charges. Trying to make paper."

The last two sentences did not appear on the transcript of the tape which had previously been marked as an exhibit by defendant during cross-examination of the detective who made the recording. It is these last two sentences of which defendant complains. From the record made in chambers following defendant's motion for mistrial, it appears that the trial court, the prosecutor, and the court reporter had difficulty in understanding what defendant said in the last two sentences. We experienced similar difficulties in listening to the tape. The tape was played only one time to the jury and no further reference to the objected matter appears in the record. The tape had been requested by defendant in discovery and that request had been granted. The tape was the subject of a motion to suppress which was denied. Defendant did request that the tape be played in chambers prior to it being played for the jury which the trial court, perhaps unwisely, declined to do. No specific objection was made to the now challenged portions of the tape prior to playing. In his brief defendant contends his counsel was unaware of the tape's contents, but nothing in the record reflects that counsel was denied the opportunity to hear the tape prior to trial.

■ Under the circumstances we cannot conclude that the court abused its discretion in denying defendant's motion for mistrial.

*State v. Hamell*, 561 S.W.2d 357 (Mo.App. 1977) [8]. The statements were exculpatory in nature, were of dubious intelligibility, were in part in a slang not commonly utilized by jurors, were somewhat ambiguous, were buried in the middle of the recording, were played only once and were never highlighted. The experienced trial judge withheld ruling on the motion for mistrial overnight in order to fully consider the motion. He was in a much better position than we to judge whether the jury in fact heard and understood the statements and the impact of them on the jury.[3]

■ Defendant's final point is that the trial court erred in allowing the amendment of the indictment by interlineation after the jury retired.[4] The amendment involved changing the name of the accused from "William Earl Johnson, Jr." to "William Harold Johnson, Jr." Variations in the name were used by defendant in documents he signed after arrest and in his testimony. The true identity of defendant was never in dispute. As a general principle, in the absence of a statute or rule which so provides, the court may not make or permit the amendment of an indictment. *Boothe v. State*, 534 S.W.2d 74 (Mo.App. 1976) [1]. In this state the statute of jeofails, Sec. 545.030, RSMo 1978, has been construed as authorizing amendments with respect to matters within its purview. *State v. Hoyt*, 324 Mo. 837, 24 S.W.2d 981 (1930) [1]; *Hayes v. State*, 501 S.W.2d 508 (Mo.App.1973) [3, 4]. Paragraph 1 (18) of the statute covers "any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The amendment here was one of form which did not prejudice the rights of the defendant. It did not change the nature of the crime or charge a different offense and in no way hampered the defendant's defense. Because defendant had not declared his true name before the proceedings it was not necessary to

---

3. The defendant's prior criminal record came before the jury subsequently when defendant testified, although defendant now contends he decided to testify only because of the statements on the tape.

4. The amendment occurred because the jury during its deliberations asked what the true name of the defendant was.

have amended the indictment to reflect his true name. Sec. 545.230 RSMo 1978. The defendant was identified by his victims as the man who committed the crimes. His name was of no consequence to the charges. He could suffer no prejudice from the amendment allowed. *State v. Schricker*, 29 Mo. 265 (1860).

Judgment affirmed.

SATZ and PUDLOWSKI, JJ., concur.