**STATE of Maine**

v.

**Brent WARREN and
Christopher O'Shea.**

Supreme Judicial Court of Maine.

Argued Jan. 30, 1990.
Decided March 6, 1990.

---

Paul Aranson, Dist. Atty., Laurence Gardner, Deputy Dist. Atty., Diane Powers (orally), Asst. Dist. Atty., Portland, for plaintiff.

Gene R. Libby, Roy S. McCandless (orally), Verrill & Dana, Kennebunk, for Brent Warren.

Dennis Levandoski (orally), Lowry & Associates, Portland, for Christopher O'Shea.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

Brent Warren and Christopher O'Shea bring this consolidated appeal from the judgment of the Superior Court (Cumberland County, *Lipez, J.*) entered on a jury verdict finding each defendant guilty of one count of Class A Rape, in violation of 17–A M.R.S.A. § 252 (1983).[1] Each defendant argues that the evidence was insufficient to establish that the victim submitted to intercourse with him as a result of compulsion. We find sufficiency of the evidence to be the only issue raised on appeal that merits discussion. We conclude that the evidence was sufficient to establish the requisite compulsion and we affirm both convictions.

I.

Read in the light most favorable to the State, the evidence reveals the following facts: On January 17, 1988, the victim went to the Free Street Pub in Portland where she knew a bartender. The victim stands 5 feet and 1 inch tall, weighs only 100 pounds, and was at the time 33 years old. Both defendants O'Shea and Warren were at the bar that night with a third friend, Robert Michaud. All three of these men are substantially larger than the victim. Although she rarely drank alcohol, the victim had five drinks that night. By the time the bar closed she felt ill. Realizing that she was too intoxicated to drive, the victim told someone to ask the bartender she knew to give her a ride home. Defendant O'Shea then approached the victim, explained that he knew one of the victim's friends, and that they had met once at the victim's friend's house. O'Shea offered her a ride home, which she accepted.

Once they were outside of the bar, the victim became ill and vomited. O'Shea then drove her to her apartment, assuring her that "everything would be okay." When the two arrived at her home, O'Shea helped her climb the three floors to her apartment. She felt ill again as she opened the door to her apartment, and she immediately ran to the bathroom to vomit a second time. Upon emerging from the bathroom, the victim found O'Shea in her living room with his two companions, Warren and Michaud. She asked the three to leave, but they ignored her request. O'Shea then used the telephone in her bedroom to call the bartender that the victim knew at the Free Street Pub. She was alone in the bedroom with O'Shea as he made this call. O'Shea informed the bartender that the victim "got home safe." O'Shea did not identify himself or tell the bartender from where he was calling.

After hanging up, O'Shea started to fondle the victim. She "told him no," and rushed to the bathroom to vomit for a third time. She testified that she didn't consider

---

1. 17–A M.R.S.A. § 252 was repealed by P.L.1989 c. 400, § A, 3 (effective Sept. 1, 1989).

fleeing from her apartment at that point. "Where would I go," she stated at trial. "I couldn't drive." When she came out of the bathroom for the second time, she once again asked the three men to leave her apartment. The men did not answer her and remained where they were. The victim became "very afraid." Seeking help, she went into her bedroom and made a telephone call to her friend whom O'Shea had previously claimed to know. She did not want the men in her apartment to know that she was making the call for fear that they would "get upset." The victim's friend testified that the victim was crying over the telephone when she called him. He testified that the victim said she did not know the people in her apartment, and that she could not get them to leave. The victim's friend described her voice as sounding "between a whimper and a cry" as she "pleaded ... four times probably in succession" with him to come over and persuade the three men to leave her alone.

When the victim was about to hang up the telephone, O'Shea reentered the bedroom. O'Shea asked her what she was doing, and she replied making a phone call. O'Shea took the receiver from her hand, hung up the telephone, and told her that she did not need to call anybody. He sat down beside the victim on the bed and began to kiss and touch her. When she said "please leave," he told her that everything would be okay. She asked him to leave again. Ignoring her request, O'Shea pushed her back lengthwise upon the bed. She told him to stop. O'Shea then pulled down the victim's pants, and she began to cry. She succeeded in pulling her pants back up once, but O'Shea pulled them down again and removed them altogether. O'Shea then pushed her legs apart with his hands. As she continued to cry and ask him to stop, O'Shea penetrated her and had sexual intercourse with her. At some point while O'Shea was having intercourse with the victim, Michaud entered the bedroom and laughed.

Warren succeeded O'Shea into the bedroom, got on the bed, and undid his pants. The victim yelled to O'Shea, "please have him stop and to please leave," and to War-ren, "please stop. Please go away." Her pleas went unanswered. Without ever saying a word, Warren had sexual intercourse with her. He then left the bedroom, and Michaud entered. The victim was crying hysterically. Michaud had sexual intercourse with her as well. The victim testified that she was afraid for her life, not knowing "what they would do next." She stated that she "[j]ust felt like a part of me was gone." As Michaud finished with her, she heard a knock on the door and some shuffling. The three left her apartment hurriedly soon thereafter. The victim remained in bed, covered herself up and eventually cried herself to sleep.

The following morning, the victim awoke to find her apartment in shambles. She quickly discovered that a child support check, a credit card, a check cashing card, cash, jewelry and a set of keys were missing. She reported the whole ordeal to her neighbor and called the police. The Portland Police investigated the incident. On August 3, 1988, a grand jury indicted O'Shea, Warren and Michaud each on one count of Rape (Class A), Gross Sexual Misconduct (Class C), Criminal Mischief (Class D) and Theft (Class E). The State dropped the Gross Sexual Misconduct charge for each defendant. Michaud plead guilty to the rape charge.

The remaining two defendants were tried jointly. At the close of the State's case, both O'Shea and Warren moved for acquittal on all counts. The court granted the defendants' motions for acquittal on the theft and criminal mischief counts. The charge of rape was submitted to the jury. After two hours of deliberation, the jury returned guilty verdicts against both defendants.

## II.

Each defendant contends that there was insufficient evidence presented from which a jury rationally could conclude that the victim submitted to sexual intercourse with him as a result of compulsion. "The standard to be applied to determine whether evidence is sufficient to support a jury's

conviction is whether, based on that evidence viewed in the light most favorable to the prosecution any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

The applicable rape law in effect at the time of the incidents in question provided: "A person is guilty of rape if he engages in sexual intercourse ... [w]ith any person and the person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E." 17–A M.R.S.A. § 252, Section 251(1)(E) of the Criminal Code states the following:

> "Compulsion" means physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.

17–A M.R.S.A. § 251(1)(E) (1983).

■ We address the issue of compulsion with respect to defendant O'Shea first. Viewing the evidence in the record before us in the light most favorable to the prosecution, it was clearly rational for the jury to have concluded that the victim submitted to sexual intercourse with O'Shea as a result of compulsion. First, the evidence was sufficient to establish that O'Shea's actions constituted force within the meaning of section 251(1)(E). Second, the victim was actually in fear of imminent bodily harm. Her testimony indicates that when the three men refused to leave her apartment she became "very afraid." She testified that she was so frightened that she called her friend whom O'Shea had claimed to know and pleaded with him to come to her aid. The victim's friend corroborated her state of trepidation, testifying that the telephone call that she made to him was unlike any other he had received from her in terms of the urgency of her request. Moreover, the victim testified that she dared not attempt to physically repel O'Shea once he had pushed her legs apart because she feared, as she stated, that

"he'd beat the shit out of me." Third, the victim's fear of bodily harm was reasonable in the circumstances. As has already been shown, the victim found herself alone, in a weakened state, in her small apartment late at night with three uninvited men, only one of whom she knew even vaguely, who refused to leave when she repeatedly asked them to get out. The victim is not a large woman and there is no question that each of the three men possessed greater size and more strength than the victim. Thus, we conclude that if the jury believed the testimony presented, which they were entitled to do, they could find that the victim in fact feared serious bodily injury and that such fear was reasonable under the circumstances. *See State v. Ricci*, 507 A.2d 587, 588–89 (Me.1986); *State v. Benson*, 453 A.2d 132, 134 (Me.1982).

■ We now direct our attention to the question whether the evidence was sufficient for a jury rationally to find that the victim submitted to sexual intercourse with defendant Warren as a result of compulsion. Warren argues that a trier of fact could not find that the victim submitted to intercourse with him as a result of compulsion because he did not use any force on the victim or make any explicit threats to her.

Nevertheless, viewing the evidence as a whole in the light most favorable to the prosecution, we conclude that the evidence rationally supported the conclusion that the victim submitted to Warren's sexual acts as a result of compulsion within the meaning of the statute. In *Missouri v. Gray*, 497 S.W.2d 545, 549 (Mo.App.1973), the Missouri Court of Appeals considered the question whether a defendant can be convicted of forcible rape when the victim submitted to the defendant's sexual acts out of fear of a third party. Holding that sufficient force to substantiate a rape conviction could be present in such circumstances, the Missouri Court reasoned:

> One may be guilty of rape if his victim submits through fear of physical violence, even if that fear is caused by one other than the defendant, if the defendant at the time has knowledge that his

victim is submitting through such fear. Such a defendant in effect adopts and uses for his own lascivious purpose, the fear engendered by another.

*Id.*, 497 S.W.2d at 549. We recognize and adopt the wisdom of the Missouri Court's reasoning.

We find that sufficient evidence was presented at trial for the jury rationally to have concluded that Warren knew of the force used by O'Shea and adopted it for his own purposes. The jury could have found that the combination of physical force previously exerted by O'Shea and the threat of additional physical force and serious bodily injury generated by the presence of all three uninvited men who refused to leave and who, as shown by Warren's act of removing his pants, clearly intended to continue to take sexual liberties with the victim was sufficient to instill in her a reasonable fear that Warren and the others might imminently inflict serious bodily injury upon her unless she submitted to Warren's advances. This fear, the jury could properly find, was sufficient to prevent her from physically repelling Warren. *See State v. Levesque*, 479 A.2d 1302, 1303 (Me.1984). *See also State v. Langill*, 567 A.2d 440, 444 (Me.1989) (where two co-defendants had previously threatened and beaten victim, victim submitted to sexual act by reason of compulsion by third co-defendant even though third co-defendant did not use force on or threaten victim himself).

The entry is:

Judgment affirmed.

All concurring.