STATE OF WEST VIRGINIA

*v.*

ROBERT MITCHELL BARKER

(No. 14550)

Decided July 29, 1981.

*David M. Finnerin* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Paula D. Dean, S. Clark Woodroe,* Assistant Attorneys General, for defendant in error.

PER CURIAM:

Robert Mitchell Barker appeals from a Circuit Court of Wood County final order which denied his motion to set aside the verdict and grant a new trial and sentenced him to a penitentiary term of one to ten years after a jury found him guilty of forgery and uttering. Appellant assigns as error matters relating to introduction of evidence of a collateral crime, improper pretrial identification procedures, restriction of cross-examination, and prejudicial remarks by the prosecuting attorney in closing argument.

The admission of evidence of a collateral crime occurred when a state witness, Gilbert Wood, testified that on May 22, 1977, while "driving around" Parkersburg in his mother's car he encountered appellant, with whom he was previously acquainted, and accepted an invitation to go to appellant's home. Wood's girl friend then joined them and the three went to appellant's residence. Wood stated that while he and his girl friend were inside the home he heard a car being started, and looked out in time to see appellant driving off, without permission, in Mrs. Wood's car. A checkbook for a joint checking account in the names of Wood's parents, Mr. and Mrs. Ira Wood, was in its glove compartment. When the automobile was recovered two weeks later, the checkbook was missing. On June 1, 1977, one of the checks was offered to a Kroger's store in Parkersburg as payment for items purchased there.

Appellant contends that evidence that he took the car was inadmissible because it was evidence of a collateral

crime, and prejudiced the jury against him; and the trial court erred when it overruled his objection to it. We do not agree. In *State v. Frasher*, ____ W.Va. ____, 265 S.E.2d 43 (1980), we approved the principle that evidence of other criminal acts is admissible when those acts are so blended or connected with an act charged that proof of the principal crime incidentally involves proof of those other acts, when evidence of other acts explains a crime charged, or when evidence of other acts tends logically to prove any element of a crime charged. The *Frasher* decision elaborated on our collateral crime rule set out in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Here, the car theft evidence was relevant to show how appellant obtained possession of the checks that were forged and uttered. It was not by its nature inflammatory and it was not emphasized by the State. We conclude it was admissible and that the trial court did not err in failing to sustain appellant's objection.

Appellant next contends that for several reasons the trial court erred when it admitted, over his objection, certain evidence about his identification by Ricky Smith, a Kroger employee who accepted the check. On June 18, 1977, Parkersburg police detective Smith showed Ricky Smith an array of six photographs, one of which was a photograph of appellant. After sorting through the photographs, Ricky Smith identified appellant. These same six photographs were shown to Ricky Smith in February, 1978, and once again he identified appellant.

Appellant contends the photographic array was suggestive because he was photographed wearing a jail uniform, and therefore, the trial court should have sustained his objection at trial to introduction of the photographs. We have viewed them and do not agree. They portray six young male Caucasians from the waist up, wearing a variety of casual clothing, including a mechanic's shirt. Appellant's shoulders, collar and arms appear clothed in a blue coat or mechanic's coveralls that show no insignia, writing, number, or identifying mark of any kind identifying it as a jail uniform. Consequently, we conclude that

appellant's appearance was not unduly suggestive and did not influence Ricky Smith to identify appellant.

Appellant also contends that the trial court should have excluded Ricky Smith's in-court identification of him because it was tainted by the photographic array. Appellant asserts that Smith's identification should have been excluded because on cross-examination he in effect stated that without the photographs he might have had difficulty identifying appellant. Taking Smith's testimony as a whole we believe that this answer does not, alone, require suppression of Smith's in-court identification.

Appellant also complains that the trial court erred by prematurely dismissing Ricky Smith as a witness, thereby impairing his right to cross-examination. Ricky Smith had been examined by the State on direct and had been cross-examined by appellant's counsel. A police official was testifying and the photographic array was being introduced into evidence when the court prepared to take a mid-afternoon recess. Because Ricky Smith was living in Morgantown, the State asked if he could be dismissed as a witness, and even though appellant objected, the court dismissed him after finding that he was there under a State subpoena. Witness dismissals are within trial court discretion, but when there is objection, the better practice is to allow the objecting party to show what matters further examination will bring out and demonstrate possible prejudice. Here, appellant's counsel failed to make such a showing or to make an offer of proof to demonstrate what prejudice he might have suffered. A bare assertion of prejudice does not support a conclusion that appellant was prejudiced. We also note that when the trial court overruled appellant's objection to the witness' dismissal, appellant made no motion to subpoena Ricky Smith as his witness.

Appellant's next assignment of error is that the trial court impermissibly restricted his cross-examination of expert witness Trooper Blake of the Questioned Documents Division of the Department of Public Safety. Trooper Blake testified on direct that he analyzed the check and handwriting samples of appellant, Mrs. Ira Wood, and

Ricky Smith; and that his opinion was that appellant had signed "Mrs. Ira Wood", and that Ricky Smith had written the dollar amount, payee, and the word "groceries" on the check. Ricky Smith had testified on direct that he had filled in the payee, amount, and "purpose" portion of the check and that appellant had signed it.

On cross-examination, defense counsel questioned Trooper Blake about a letter he apparently had written to the Parkersburg police prior to reaching his final conclusions. This letter was in Blake's possession when he testified, and it appears, based on the specificity of counsel's questions, that he also had seen a copy of the letter. Although the letter is not a part of the record and we are not aware of its precise contents, it appears that in it, Trooper Blake expressed uncertainty or inconclusiveness regarding his opinion. Appellant's counsel questioned Blake about the letter and a State objection on hearsay was sustained. Such testimony would, of course, not have been hearsay. Trooper Blake, the declarant, was present and was testifying: the fundamental hearsay test that an out-of-court declarant is not present and subject to cross-examination was not met.

Following these objections, however, defense counsel went on questioning about matters contained in the letter and elicited from Trooper Blake a statement that the letter's expression of opinion on the handwriting samples was not conclusive and that later he did change his thinking and express a conclusive opinion that appellant had signed Mrs. Wood's name to the check. Trooper Blake explained that his initial opinion was inconclusive because he had originally been provided with only the check and a sample of appellant's handwriting; and that he needed samples of Mrs. Wood's and Ricky Smith's writing that were later provided to him. When he received these additional samples, he expressed his final and conclusive opinion.

We do not believe, as appellant contends, that his right to meaningful cross-examination was restricted, or that he was denied an opportunity to test Blake's credibility. Counsel was able to bring before the jury the facts that

the witness had initially been uncertain of his opinion and had changed his mind. The jury was thus able to assess Trooper Blake's credibility.

Appellant also claims that he was denied inspection of the letter. As we have stated, it appears that appellant's trial counsel, who is not now his counsel on appeal, had seen it. Furthermore, there was no request to inspect it. There was no error regarding Blake's cross-examination.

Certain remarks made by the prosecuting attorney during closing argument that appellant would have every interest in the world in lying because he was trying to save his own neck; and, "If the defendant was so innocent, how come he would not voluntarily give Detective Smith his handwriting samples if he was so eager to show his innocence? He is supposed to be totally innocent of this."

There are many instructive holdings on permissible bounds of prosecutorial argument and we suggest they be adhered to rather than risking a reversal of an otherwise fairly won conviction. These remarks which are deplorable and are not condoned by this Court, do not however, standing alone, mandate a reversal of the final judgment. They are not impermissible comment on defendant's pretrial silence or his failure to testify at trial, *see*, *e.g.*, *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976); *State v. Nuckolls*, ____ W.Va. ____, 273 S.E.2d 87 (1980), and while the statements may have been improper because they were not based on the evidence, *see*, *e.g.*, Syllabus Point 2, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978), we believe they were not prejudicial:

> "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney . . . to a jury which do not clearly prejudice the accused or result in manifest injustice." Syllabus Point 1, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978), *in part*.

As a final point of error, appellant asserts that the trial court should have granted his motion for a new trial made

on the ground of newly discovered evidence. There was an affidavit of an individual who stated that he was told by a David Midcap that he, Midcap, and not appellant, forged the check.

A number of rules relating to grants of new trials because of newly discovered evidence are stated in the single syllabus of *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979):

> "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." *State v. Frazier, supra, quoting,* Syl. pt. 1, *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894).

One rule is that the new evidence must be such as ought to produce an opposite result at a second trial. We do not believe this affidavit disclosed such evidence. To begin with, David Midcap's admission that he forged the check would, at a second trial, be hearsay evidence which would not be admissible to prove the truth of the matter asserted, i.e., that Midcap did forge the check. Syllabus Point 5, *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975). The affidavit of affiant's testimony would have been admissi-

ble only to impeach Midcap if he had been called as a witness and had testified that he did not forge the check.

Furthermore, we note that appellant's theory of his defense at trial was that David Midcap had forged the check. Midcap did not testify at trial and neither the record nor appellant's brief indicate that any attempt was made to secure Midcap as a witness. Thus, it is questionable whether evidence of Midcap's alleged guilt was pursued with the diligence required by our newly discovered evidence rule. It is also significant that the motion for a new trial does not indicate that Midcap is subject to the court's jurisdiction, that his whereabouts are known, or that he would be available to be a witness at a second trial. Accordingly, we conclude that the trial court did not err in refusing to grant appellant's motion for a new trial.

Justice McGraw concludes the remarks of the prosecuting attorney require reversal and for this reason dissents.

The judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*