461 S.E.2d 462

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Dee HOTTINGER, Defendant Below, Appellant.**

**No. 22580.**

Supreme Court of Appeals of West Virginia.

Submitted May 16, 1995.

Decided July 14, 1995.

Concurring and Dissenting Opinion of Justice Cleckley July 19, 1995.

---

John G. Ours, Petersburg, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Dawn E. Warfield, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Dee Hottinger, appeals his jury conviction in the Circuit Court of Pendleton County of sexual assault in the second degree and sexual assault in the third degree. The appellant was sentenced to serve not less than ten nor more than twenty-five years in prison and fined $1000.00 for his conviction of sexual assault in the second degree. The appellant was also sentenced to serve not less than one nor more than five years in prison and fined $1000.00 for his conviction of sexual assault in the third degree, with both sentences running concurrently.

The appellant raises four assignments of error which are as follows: (1) error was committed in the prosecutor's opening statement and closing argument; (2) the evidence was insufficient to support a jury finding of forcible compulsion pursuant to *W.Va.Code*, 61–8B–4 [1991], which outlines the elements of second degree sexual assault; (3) the evidence was insufficient to support a third degree sexual assault conviction pursuant to *W.Va.Code*, 61–8B–5 [1984]; and (4) the jury should have been instructed on the elements of the offense of fornication because it is a lesser included offense of second or third degree sexual assault. For the reasons set forth below, we affirm the appellant's conviction.

I

There was conflicting evidence presented at trial. The victim, M.A.,[1] was fifteen years old when the sexual assault occurred. According to M.A., in the late summer of 1993 the appellant, who was then forty-nine years old, came by her family's house one evening and asked to have sex with M.A.'s mother. After the appellant left the house, M.A.'s mother informed her boyfriend, George Miller, that she would not comply. Miller then told M.A. that she would, instead, have to have sex with the appellant for money. M.A. asserts that she told Miller that she did not want to have sex with the appellant. However, M.A. states that because she feared being physically harmed by Miller, she got into the car with Miller and went to the appellant's house.

When Miller and M.A. arrived at the appellant's house, the appellant came outside to the car. Miller asked the appellant if he wanted sex for some beer money. The appellant said yes. Thus, while Miller remained in the car, M.A. went into the house and into the bedroom where she began disrobing. According to M.A., the appellant became rough and ripped off her bra, thereafter engaging in sexual intercourse with her.

The appellant admits to having sexual intercourse with M.A., but denies being rough with her. The appellant also denies that he went to M.A.'s family home and asked to have sex with M.A.'s mother. The appellant states that Miller and M.A. just showed up outside his house and asked whether or not he wanted to have sex with M.A. for beer money. Moreover, the appellant states that he thought M.A. was about eighteen years old. The appellant also asserts that he did not know that Miller was forcing M.A. to have sex with him.

II

The appellant argues that the prosecutor's remarks during the opening state-

---

1. Since this case involves sensitive matters, we follow our traditional practice and use only the last initial of the juvenile involved in this case. *See State v. Michael S.,* 188 W.Va. 229, 230 n. 1, 423 S.E.2d 632, 633 n. 1 (1992) (citation omitted).

ment and closing argument constituted error. We are mindful that

> '[t]he prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.' Syl. pt. 3, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

Syl. pt. 1, *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981).

■ The appellant specifically complains about two statements made by the prosecutor during his opening statement. The first statement made by the prosecutor was that

> [t]he evidence in this case against [the appellant] will show that George Miller made it well known that people could have sexual intercourse with [M.A.]; as a matter of fact, he would brag; he would say things like this girl has a figure that she has because of me. He would also say to people—and one of the selling points to people to get her to have sexual intercourse, and one of the things he would tell his buddies and these guys who were paying her or whatever, was that she's only fifteen; that was a selling point for George Miller.

Although the appellant does not explain in his brief why the above statement was error, at the June 10, 1994 hearing on his motion for a new trial, the appellant argued that the above statement was objectionable because it referred to other defendants and to facts not in evidence.

■ We acknowledge that in syllabus point 2 of *Critzer, supra,* this Court held the following in reference to a prosecutor's statements in closing argument:

> 'An attorney for the state may prosecute vigorously as long as he deals fairly with the accused; but he should not become a partisan, intent only on conviction. And, it

is a flagrant abuse of his position to refer, in his argument to the jury, to material facts outside the record, or not fairly deducible therefrom.' Syllabus, *State v. Moose*, 110 W.Va. 476, 158 S.E. 715 (1931). However, this Court has held that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 1, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978) (This Court also stated that improper remarks made by a prosecutor in a closing argument would not warrant reversal if the defendant was not prejudiced and if manifest injustice did not occur). *See also State v. Stewart*, 187 W.Va. 422, 426–28, 419 S.E.2d 683, 687–89 (1992) (This Court applied the above test set forth in *Dunn, supra,* to comments made by a prosecutor during closing argument).

■ The prosecutor explained in the record that he thought that evidence would be introduced at trial to support the above statements and was surprised when M.A.'s testimony revealed that Miller had not made those comments to the appellant in her presence. Although the prosecutor should not refer to material facts which *will not be introduced at trial* during an opening statement, it is less likely to warrant reversal than if the prosecutor argues facts which he knows *have not been introduced into evidence* during closing argument.

Moreover, as the above statement by the prosecuting attorney reveals, he prefaced his remark with the following: "The evidence in this case [against the appellant] will show...." Additionally, at the beginning of his opening statement, the prosecutor informed the jury that

> as the Judge indicates, what I will tell you is not evidence in this case. The evidence in the case will come from the witness stand, because I'm not under oath.... The purpose of an opening statement is simply to tell you what we believe the evidence will show in this case.

Thus, while it is clear that the prosecutor misstated what evidence would be introduced at trial, the appellant has failed to show that

it clearly prejudiced him or resulted in manifest injustice given the fact that the prosecutor expressly informed the jury that his opening statement was not evidence. *Cf. State v. Barker,* 168 W.Va. 1, 281 S.E.2d 142 (1981) (Statements by prosecuting attorney during closing were deplorable and may have been improper because they were not based on evidence; however, they did not warrant reversal because they did not clearly prejudice the accused or result in manifest injustice).

■ The appellant also complains about the following statement made by the prosecutor during his opening statement after he had described the two charges against the appellant: "That's the two offenses that this man is guilty of." The appellant asserts that the prosecutor impermissibly gave his opinion on appellant's guilt.

Indeed, this Court in syllabus point 3 of *Critzer, supra,* has stated that "[i]t is improper for a prosecutor in this State to '[a]ssert his personal opinion as to the ... guilt or innocence of the accused[.]'" (citation omitted). However, as the State points out, the prosecutor went on to say that

> [t]he Judge instructed you that it's the burden upon the State to prove this matter beyond a reasonable doubt. Ladies and gentlemen of the jury, when you hear this evidence, you will find proof beyond a reasonable doubt that this man committed both of the offenses for which he's charged.

Thus, although we do not condone the prosecutor's statement that he had described

the two offenses the appellant was guilty of, the statement which followed clearly informed the jury that it was their duty to determine whether or not the appellant was guilty of the two offenses he was charged with committing. Therefore, the appellant has failed to show that the prosecutor's statement clearly prejudiced him or resulted in manifest injustice.[2] *See State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982) (Prosecutor's remark that it was his personal belief that the defendant was trying to kill the victim, while not condoned, was not reversible error since it did not clearly prejudice the accused or result in manifest injustice). *Compare Critzer, supra* (Prosecuting attorney's statements during closing argument injected his personal opinion as to the guilt of the defendant, as to the credibility of witnesses and argued facts not in evidence, thereby requiring reversal because prejudicial to defendant and denied him a fair trial).

■ The appellant also complains about several remarks made by the prosecutor during his closing argument. However, we will address only two remarks because the appellant failed to object below to any of the other remarks which he now complains of on appeal: "In order to take advantage of remarks made during an opening statement or closing argument which are considered improper an objection must be made and counsel must request the court to instruct the jury to disregard them." *State v. Coulter,* 169 W.Va. 526, 530, 288 S.E.2d 819, 821 (1982) (*citing State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949)).[3]

---

2. We point out that the appellant did not properly preserve this error below. After the prosecutor made the statement above, the appellant's trial attorney told the trial judge that he would like to place an objection on the record. The trial judge asked the appellant's trial attorney whether he wanted to place the objection on the record at that time; however, the appellant's trial counsel declined to do so stating that he preferred to give his opening statement. Our review of the record discloses that the appellant's trial attorney did not later place an objection on the record regarding the above statement. Moreover, in that we find that the above statement by the prosecutor was not an error requiring reversal, the plain error doctrine is not implicated. *See* syl. pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

3. We recognize that we could address the appellant's contentions pursuant to the plain error doctrine even though the appellant failed to object to the comments when they were made. In syllabus point 7 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995) this Court held that in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *See also* syl. pt. 4, in relevant part, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988) (The plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.")

■ The first objection from the appellant came after the prosecuting attorney started talking about money being exchanged for the sexual activity between M.A. and the appellant. The appellant pointed out that prostitution had not been charged. The trial judge, after the appellant's objection, made the following statement to the jury:

The jury will remember that you will base your decision on the evidence that you've heard, not on the argument of counsel; however, each of the attorneys are permitted to argue the law and the evidence and any reasonable inferences therefrom, but it is not evidence, and you would base your decision only on the evidence.

On the second occasion the appellant objected to the following statement: "I'm confident on behalf of the State of West Virginia that the kids in this community are going to be protected from incidents like this in the future, and that you will find [the appellant] guilty[.]" The trial judge instructed the jury to disregard the above remark by the State.

In light of the trial judge's actions regarding the above two remarks made by the prosecutor during his closing argument, the appellant has failed to show how the remarks clearly prejudiced him or resulted in manifest injustice. Accordingly, we hold the remarks by the prosecutor during his opening statement and closing argument do not require reversal.

### III

The appellant asserts that the evidence was insufficient to support a jury finding of forcible compulsion pursuant to *W.Va.Code*, 61–8B–4 [1991], which outlines the elements of second degree sexual assault.

*W.Va.Code*, 61–8B–4(a)(1) [1991] states, in relevant part: "A person is guilty of sexual assault in the second degree when: (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion[.]" Furthermore, *W.Va.Code*, 61–8B–1(1)(c) [1986] defines "forcible compulsion" as, *inter alia*, "[f]ear by a child under sixteen years of age caused by intimidation, expressed or implied, by another person four years older than the victim."

■ In the case before us, the State stipulated that the appellant did not forcibly compel M.A. to have sexual intercourse. Instead, the State indicated, without objection from the appellant, that the forcible compulsion came from Miller and that the appellant was aware that Miller, who was four years older than M.A., intimidated M.A., who was younger than sixteen years old, into having sexual relations with the appellant against her will.[4] The appellant argues that the

---

However, in that our review of the prosecutor's closing argument fails to disclose that the comments seriously affected the fairness, integrity, or public reputation of the judicial proceeding, the plain error doctrine is not implicated. *See Miller, supra.*

4. The appellant did not object to the following instruction given by the trial judge:
Forcible compulsion is defined as fear by a child under 16 years of age caused by intimidation, expressed or implied, by another person four years older than the victim and of which the Defendant had knowledge.
Before [the appellant] can be convicted of Sexual Assault in the Second Degree, the State must over come the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt
UNDER COUNT ONE OF THE INDICTMENT THAT:
1. The [appellant]
2. in Pendleton County, West Virginia
3. did engage in sexual intercourse
4. with [M.A.]

5. without her consent
6. and the lack of consent was the result of forcible compulsion known to the Defendant.
Furthermore, the appellant does not assert in this appeal that forcible compulsion cannot be found to arise from one other than the one committing the sexual assault pursuant to *W.Va.Code*, 61–8B–4 [1991]. Therefore, we will not address whether or not the forcible compulsion necessary for conviction of second degree sexual assault pursuant to *W.Va.Code*, 61–8B–4(a)(1) [1991] must be proven to have come from the appellant. *See* syl. pt. 3, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977) ("Assignments of error that are not argued in the appellant's brief may be deemed by this Court to be waived.")
We note, however, that at least one court has recognized that a defendant may be guilty of rape even if the victim submits because of fear from one other than the defendant if the defendant has knowledge that the victim is submitting

evidence does not support a jury finding that the appellant knew M.A. was being forced or intimidated by Miller into having sexual relations with him.

We are mindful of the following:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). *See also* syl. pt. 10, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992).

When examining the evidence in the light most favorable to the prosecution, the evidence indicates that the jury could find that the appellant knew that M.A. was being forced by Miller into having sexual relations with him. M.A. testified that her mother started living with Miller when M.A. was two years old. The appellant asserts that he first met M.A. approximately two years previously when she would have been thirteen years old. However, M.A. testified that the appellant had been to her house approximately twice a month over a three- or four-year period at which time M.A. would have been approximately eleven to fifteen years old. Moreover, the appellant testified that he had known Miller off and on over a ten-year period. Thus, the jury could logically infer that the appellant knew M.A., knew how old

she was and knew that Miller was like a stepfather to her.

Additionally, as we previously stated, M.A. testified that before Miller took her to the appellant's house, the appellant had stopped by her house and asked Miller if he could have sex with M.A.'s mother. After the appellant left the house, M.A.'s mother informed Miller that she would not comply, and Miller informed M.A. that she, instead, would have to have sexual relations with the appellant. M.A. concedes that the appellant was not at her house when Miller demanded that she have sexual relations with the appellant. However, the appellant obviously knew something was amiss because he testified that he found it strange that Miller and M.A. showed up at his house and asked him if he wanted sex for some beer money.

When viewing the evidence in the light most favorable to the prosecution, it is clear that the jury could reasonably infer that the appellant knew that a girl who is younger than sixteen years old would not willingly allow someone who is like a stepfather to pander her sexual services in exchange for beer money. Thus, in that the jury could infer that the appellant knew that M.A., a child less than sixteen years of age, was being intimidated by Miller, who was four years older than M.A., into having sexual relations with him, it is clear that the jury could have found that there was sufficient evidence of forcible compulsion to support a finding of guilt of sexual assault in the second degree pursuant to *W.Va.Code*, 61–8B–4(a)(1) [1991] and 61–8B–1(1)(c) [1986].

Accordingly, when viewing the evidence in the light most favorable to the State the appellant has failed to convince us that the evidence was "manifestly inadequate and that consequent injustice has been done." Syl. pt. 1, *Starkey, supra*.[5]

---

because of such fear. *See State v. Pierson*, 610 S.W.2d 86 (Mo.Ct.App.1980) and *State v. Gray*, 497 S.W.2d 545 (Mo.Ct.App.1973).

**5.** We acknowledge that Justice Cleckley has criticized the use of *Starkey, supra*, as "the appellate standard for reviewing an insufficiency of the evidence assignment of error." *State v. Phalen*, 192 W.Va. 267, 271, 452 S.E.2d 70, 74 (1994) (Cleckley, J., concurring). Justice Cleckley states that the manifest injustice standard is too high of an evidentiary standard and should be replaced

by the following: "[O]n appeal of a criminal conviction, this Court must consider the evidence in the light most favorable to the prosecution and ask whether any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 272, 452 S.E.2d at 75.

If we were to apply the standard of review suggested by Justice Cleckley, we would reach the same result in the case before us. When viewing the evidence in a light most favorable to

## IV

■ The appellant argues that the evidence was insufficient to support a conviction of third degree sexual assault. *W.Va.Code,* 61–8B–5(a)(2) [1984] outlines the elements of sexual assault in the third degree: "A person is guilty of sexual assault in the third degree when: ... (2) Such person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant."

The evidence at trial reveals that the appellant was forty-nine years old and M.A. was fifteen years old when the sexual assault occurred. The appellant asserts that he has an affirmative defense pursuant to *W.Va. Code,* 61–8B–12(a) [1984] since he did not know M.A.'s age when the incident occurred nor was he reckless in failing to discover that information.[6] The appellant bases his argument on M.A.'s appearance and on the fact that he had heard that M.A. was getting married.

The jury was instructed on the affirmative defense pursuant to *W.Va.Code,* 61–8B–12(a) [1984], and the jury saw M.A. in person along with a picture taken of her around the time M.A. and the appellant engaged in sexual intercourse. Therefore, the jury could rationally find that the appellant, who was more than four years older than M.A. knew that M.A. was younger than sixteen years old. Thus, pursuant to *Starkey, supra,* when viewing the evidence in a light most favorable to the prosecution, the appellant has failed to demonstrate that "the evidence was manifestly inadequate and that consequent injustice has been done."[7]

## V

■ The appellant asserts that the jury should have been instructed on the elements of the offense of fornication because it is a lesser included offense of second or third degree sexual assault. In syllabus point 1 of *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982) this Court held:

'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981).

The offense of fornication is not defined in *W.Va.Code,* 61–8–3 [1923] which makes it a crime. According to the State, the appellant offered the following definition of fornication in his instruction which was refused: "[Fornication is the] unlawful sexual intercourse between two unmarried persons."

Clearly, fornication is not a lesser included offense of second degree or third degree sexual assault. Accordingly, this issue is without merit.

## VI

In that the appellant raises no assignment of error requiring reversal, we affirm his conviction of second and third degree sexual assault.

Affirmed.

the prosecution, a rational finder of fact could have found, beyond a reasonable doubt, that the appellant committed second degree sexual assault.

6. *W.Va.Code,* 61–8B–12(a) [1984] states, in relevant part:

In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, ... it is an affirmative defense that the defendant, at the time he or she engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such inca-

pacity to consent, unless the defendant is reckless in failing to know such facts or conditions.

7. As we indicated in n. 5, *supra,* Justice Cleckley criticizes the use of *Starkey, supra* as the standard of review in a sufficiency of the evidence assignment of error. However, even if we were to apply the standard of review recommended by Justice Cleckley, we would reach the same result in the case before us: When viewing the evidence in a light most favorable to the prosecution, a rational finder of fact could have found, beyond a reasonable doubt, that the appellant committed third degree sexual assault. *See* n. 5, *supra.*

BROTHERTON and RECHT, JJ., did not participate.

FOX, Judge, and MILLER, Retired J., sitting by temporary assignment.

CLECKLEY, J., concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

CLECKLEY, Justice, concurring, in part, and dissenting, in part:

I concur in most of what the majority opinion says, and I agree this defendant violated the criminal laws of the State of West Virginia. I cannot agree, however, that the evidence is sufficient to support a conviction of second degree sexual assault.[1] Thus, I write separately to express my opposition to Part III of the majority's opinion. Accordingly, I respectfully dissent from that part of the opinion; in all other respects, I concur.

In Part III, the majority concludes the evidence was sufficient to sustain the defendant's conviction of second degree sexual assault. W.Va.Code, 61–8B–4 (1991). When reviewing the sufficiency of the evidence, an appellate court should view all evidence, whether circumstantial or direct, in the light most favorable to the prosecution, with all reasonable and credibility choices to be made in support of the jury's verdict. The evidence is sufficient to support a conviction if a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

In my judgment, the defendant correctly contends the evidence was insufficient to permit any rational trier of fact to find beyond a reasonable doubt that he knew the victim was being forced or coerced into having sexual intercourse with him, which is a critical and material element of sexual assault in the second degree. During the trial of this case, the State stipulated that the defendant did not personally use forcible compulsion against the victim. Instead, the prosecuting attorney remarked that the State was relying upon intimidation imposed by the victim's mother's paramour, George Miller. Specifically, the prosecuting attorney said:

> "[W]e will be perfectly willing to stipulate—there's no allegations against this [defendant] that he threatened [the victim] with bodily harm or that he threatened to kidnap her; that he threatened to kill her. This is a case where we're relying upon intimidation, because this girl is under sixteen, and it can be intimidation by any person, not necessarily this defendant. The case is, there was intimidation by George Miller in this case, ... we're not alleging that against the defendant."

The jury was instructed that forcible compulsion of a child under sixteen years of age is fear "caused by intimidation, expressed or implied, by another person four years older than the victim and of which the Defendant had knowledge." *See* W.Va.Code, 61–8B–12(a) (1984).[2] The prosecuting attorney argued that although the defendant did not cause the intimidation of the victim, the evidence proved the defendant was aware or should have been aware of the victim's age and the intimidation imposed by Mr. Miller.

Considering the evidence in the light most favorable to the prosecution, the only evi-

---

1. There are many issues that were not raised on this appeal that in my judgment should have been raised. Mindful of what the United States Supreme stated in *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994 (1983) ("[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"), I cannot condemn appellate counsel for limiting this appeal to the issues addressed.

2. W.Va.Code, 61–8B–12(a), provides:

> "In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, ... it is an affirmative defense that the defendant, at the time he or she engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such incapacity to consent, unless the defendant is reckless in failing to know such facts or conditions."

dence supporting the State's theory is that the victim testified the defendant had been to her house about twice a month for the last three or four years. She stated the defendant would come to the house to speak with Mr. Miller. The defendant admitted he had known George Miller "off and on for about ten years," but contended he first met the victim approximately two years ago. The defendant only could recall having a conversation with the victim on one occasion when they were talking about some VCR tapes he was borrowing from Mr. Miller.[3]

On the evening the defendant had sexual intercourse with the victim, the victim testified the defendant was drunk when he arrived at her house to speak with Mr. Miller about arranging to have sexual intercourse with the victim's mother.[4] The victim stated both she and her mother were in a separate room from the defendant and Mr. Miller, but she could overhear the conversation between the two men. After the defendant left, the victim's mother refused Mr. Miller's request that she have sexual intercourse with the defendant. Thereafter, Mr. Miller told the victim she would have to go. The victim stated neither she nor her mother said anything before the defendant left. The victim further testified she went to the defendant's house with Mr. Miller because Mr. Miller threatened to beat her up if she did not go. Significantly, the threats did not take place in the presence of the defendant nor was he told about them.

The victim said that once she and Mr. Miller arrived at the defendant's house she went into the bedroom and took off her clothes. She asserted the defendant treated her roughly and ripped off her bra; however, in the State's brief, it is conceded the defendant did not threaten or physically injure the victim in any way. The victim also stated the defendant did not know she was being compelled to have sexual intercourse with

him at the direction of Mr. Miller, and she never told the defendant she did not want to have sex with him. The defendant testified he thought the victim was about eighteen years old on the evening he had sexual intercourse with her. He based his belief on her appearance and because he "knew that she was supposed to be getting married[.]"[5]

At the close of the State's evidence, the defendant moved for a directed verdict of acquittal. The trial court denied the motion stating, in part:

"The Court believes that the apparent closeness of [the defendant] to the family would indicate to the jury, if they elect to find it, that he would have known that George Miller was not only giving this girl—forcing this girl but his own now wife—into these acts, and the Court would further find that the act of force is as counsel for Defendant has argued, one that must exist but not necessarily on the part of the defendant, so long as he had knowledge of and took advantage of it, and if that is the situation, the Court believes that the evidence is sufficient here to warrant the jury to adopt that conclusion; that is not to say that under the evidence this Court either would or would not reach that conclusion, but the Court is not the fact finder and believes there is adequate evidence in the file to permit the jury to reach that conclusion if it is so minded."

Likewise, the trial court denied the defendant's post-trial motion finding, in part, "there was evidence that was sufficient, although circumstantial, to allow the matter to go to the jury on that issue of forcible compulsion and knowledge[.]"

I do not quarrel with the majority's position that the defendant knew the victim was under age, and, for that reason, I concur in finding the defendant guilty of third degree

3. The defendant testified he saw the victim a total of about eight times, four of which were in her home.

4. The defendant denies he went to the victim's house. He maintains the victim and Mr. Miller just showed up at his house and Mr. Miller asked him if he would like "a little strange" in exchange for some beer money.

5. At first, the victim testified the defendant knew how old she was because Mr. Miller told everyone her age. However, upon objection by defense counsel, she said she never heard Mr. Miller and the defendant discuss her age.

sexual assault. Nevertheless, there is simply no evidence of any kind, direct or circumstantial, that shows the defendant knew the victim was being coerced by a third person to have sex with him. The majority opinion cites no facts but contends generally that the defendant should have known what was going on because of his acquaintance with the victim's stepfather. The issue is not whether the defendant knew the stepfather, but whether he knew the stepfather coerced the victim into having sex with the defendant; on this issue, the record is totally barren of any supporting facts. This case could not survive the preponderance of evidence standard, and it certainly cannot withstand the beyond a reasonable doubt standard.

The problem is not one of the nature of the evidence—whether circumstantial or direct—but is one of its quantity. A defendant's participation in a crime certainly can be proven by circumstantial evidence, if there is enough of it. Until today, however, the decisions of this Court squarely and consistently held that mere suspicion was insufficient to prove someone's guilt beyond a reasonable doubt.

The element of "knowledge" is not a loophole or technicality designed to benefit persons accused of sexual assault. Instead, it serves to protect against unfair or unjustified convictions of an offense where knowledge is a material and distinguishing element. Only the Legislature should be able to make inroads in the element of knowledge of coercion in second degree sexual assault cases. To be clear, no one should have the right to coerce another into having sexual intercourse. But the law provides and should continue to provide for the requirement that the prosecution not only establish but prove beyond a reasonable doubt that the victim was under age and that the defendant was aware of the coercion by a third person before he can be found guilty of second degree sexual assault. That is what the reasonable doubt standard is all about.

As a society, we have given much to the war against sexual assault on our citizens, which is the way it should be. But one thing we should not sacrifice is the fundamental constitutional principle that no man or woman may be convicted of a crime except upon proof beyond a reasonable doubt.

Accordingly, I must regrettably, but most respectfully dissent.