704 S.E.2d 727

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Richard Alan POORE, Defendant Below, Appellant.**

**No. 35271.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 7, 2010.

Decided Nov. 19, 2010.

---

William B. Summers, Esq., Parkersburg, WV, for Appellant.

Darrell V. McGraw, Esq., Attorney General, R. Christopher Smith, Esq., Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

The appellant, Richard Alan Poore, appeals his conviction of one count of first-degree murder and his sentence of life in prison without mercy in the Circuit Court of Pleasants County. On appeal, the appellant assigns several errors that allegedly occurred during his trial which, he claims, rendered the trial unfair. Because we find prejudicial error in the proceedings below, we reverse the appellant's conviction.

## I.

### FACTS

On April 14, 1981, Richard Alan Poore, the appellant, was in the family trailer with stepdaughter Laura Dunn, stepson Charles Hinton, who was five years old at the time, and the appellant's son Ricky, Jr. (hereinafter "Ricky, Jr." or "the decedent") who was almost three months old. At some point, Ricky, Jr. stopped breathing. The appellant directed Charles to run next door to call for medical help. Ricky, Jr. was ultimately hospitalized in Morgantown where he was pronounced dead two days later.

The appellant was indicted for murder in the death of Ricky, Jr. twenty-five some

years later in September 2006.[1] At his June 2008 trial, the State adduced evidence that when Dr. James Frost, the State's Deputy Chief Medical Examiner at the time of the decedent's death, retired, he left paperwork on autopsies that had been performed but for which no final report had been prepared. Subsequently, the Chief Medical Examiner in 2003, Dr. James Kaplan, reviewed Dr. Frost's uncompleted cases and finalized them. After reviewing the paperwork on Ricky, Jr., Dr. Kaplan concluded that he died of shaken baby syndrome. Dr. Kaplan testified at the trial that Ricky, Jr., at the time of death, had a very small subdural hematoma, bilateral severe retinal hemorrhages, a fatal brain injury, bruised ears and a bruised forehead, and injuries to his torso. To counter Dr. Kaplan's testimony, the appellant presented the expert testimony of Dr. John Galaznik, a pediatrician. Dr. Galaznik disputed the validity of shaken baby syndrome as a cause of death in infants. It was the opinion of Dr. Galaznik that Ricky, Jr. stopped breathing as a result of choking, and the subsequent restoration of blood flow to already dead tissue resulted in the bleeding of the brain and retinal hemorrhages discovered in Ricky, Jr.[2] The appellant also presented Dr. James Frost as a witness who testified that after conferring with the police officer who investigated Ricky, Jr.'s death in 1981, Dr. Frost could not make a determination with reasonable assurance as to whether the cause of Ricky, Jr.'s death was homicide or a naturally occurring event.[3]

The State presented the testimony at trial of Jeri Williams, the appellant's ex-wife and the mother of Ricky, Jr., who testified to the violent acts committed against her by the appellant. Also, Heather Dunn, the appellant's stepdaughter, testified that she saw the appellant beat her mother and physically abuse her siblings.[4] Finally, Charles Hinton, now 32 years old, the appellant's stepson,

testified that the appellant physically abused him. He also testified that he witnessed the appellant shake Ricky, Jr. on April 14, 1981. At the close of the trial, the jury convicted the appellant of first-degree murder with no recommendation of mercy.

## II.

### STANDARD OF REVIEW

This Court will set forth any specific standard of review applicable to a particular alleged error at the beginning of the discussion of that alleged error.

## III.

### DISCUSSION

#### 1. Improper Comments by the Prosecutor

■ First, the appellant alleges that the prosecutor's opening statement and closing argument were so improper that they poisoned the minds of the jurors and unfairly prejudiced the appellant. The State responds that no prejudicial remarks were made by the prosecutor that would warrant a reversal of the appellant's conviction. Additionally, says the State, the appellant waived any right to assert this alleged error.

■ Initially, we note that the appellant failed to timely object to the prosecutor's comments below that he now asserts were error. This does not mean, however, that the appellant waived the right to raise this matter as an issue on appeal.

Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the

---

1. An investigation into Ricky, Jr.'s death in 1981 did not result in charges being brought against the appellant.

2. According to Dr. Galaznik, Ricky, Jr. died from a lack of oxygen.

3. In addition, the appellant presented as witnesses Dr. David Meyerburg, the attending pedia-

trician at West Virginia University Hospital in 1981; Pamela Shier who was director of Chaplain Services at West Virginia University Hospital at the time of Ricky, Jr.'s hospitalization; and Pete Lake, who was the State Trooper who investigated Ricky, Jr.'s death immediately after it occurred.

4. Heather Dunn was seven years of age in 1981.

inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right— the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syllabus Point 8, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). This Court finds no evidence from the record that the appellant knowingly and intentionally relinquished or abandoned his right to assert error arising from the prosecutor's comments. Therefore, this Court will continue the inquiry to determine whether the complained of error is plain.[5]

Under our law, "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Moreover,

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syllabus Point 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). We will now examine the prosecutor's comments in the light of the foregoing principles.

The record indicates that in his opening statement the prosecutor related details in the obituary of Ricky, Jr. while displaying photographs of Ricky, Jr.'s grave and obituary. Specifically, the prosecutor stated the following:

Graveside services for Richard Alan Poore, Jr., two month infant son of Richard Alan Poore, Sr. and Jerri Smith Poore of St. Marys who died at the West Virginia University Hospital in Morgantown, West Virginia were held at the St. Marys IOOF Cemetery with the Reverend Maurice Miller officiating. He was born January 23, 1981 and is also survived by two brothers, Allen and Charles and sister[s] Heather and Laura at home and his parents. Paternal grandparents are Mr. and Mrs. Richard Poore of Amesville, Ohio.

The Ruttencutter Funeral Home in St. Marys was in charge of the arrangements. Services were held at Hadley Funeral Home in New Matamoras with the Reverend Frank Conley officiating. Burial was in the New Matamoras cemetery.

That is the obituary of Richard Alan Poore. This is the grave of Richard Alan Poore. Richard Alan Poore, Jr. was born January 23, 1981, died April 14, 1981. Baby Ricky was a real person. He did not make it very far. He did not really have a very good life. I submit, he came into this world crying and that is how he went out.

In addition, the prosecutor characterized the appellant as a lazy and shiftless individual. In his opening statement, the prosecutor indicated that Jeri Williams, the appellant's wife in 1981, had to work because "[s]omebody had to do it; the defendant was not doing it." He further depicted the appellant as having a generally abusive and violent character. He asserted that the appellant was "so abusive to everybody." Finally, the prosecutor described the appellant's disposition as "pretty violent," "explosive," "pretty irascible," "foul."

After reviewing the prosecutor's remarks in the context of the entire trial, this Court has little difficulty in concluding that the remarks constitute an error which is clear. Under our law, "[g]reat latitude is allowed counsel in argument of cases, but

---

5. "This Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error." Syllabus Point 1, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998)

counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury." Syllabus Point 2, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978). *See State v. McCracken*, 218 W.Va. 190, 624 S.E.2d 537 (2005) (finding that a prosecutor's recitation of the "Now I Lay Me Down To Sleep" prayer during closing argument was improper and not based upon properly introduced evidence). Obviously, the prosecutor's remarks concerning the events surrounding the funeral service of the decedent and the appellant's abusive character would tend to provoke sympathy for the decedent and incite anger toward the appellant.

■ With regard to whether the clear error affected the appellant's substantial rights and seriously affected the fairness of his trial, we find instructive our holding in Syllabus Point 6 of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995):

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

First, as noted above, the prosecutor's comments regarding the appellant's abusive character were very likely to prejudice the appellant. Second, the prosecutor's remarks were not isolated but rather extensive, appearing numerous times throughout the opening statement. Third, absent these remarks, the competent proof introduced to establish the appellant's guilt was not strong. While Charles Hinton testified that he witnessed the appellant shake the decedent, his testimony occurred 27 years after the incident in question when Mr. Hinton was only five and one-half years of age. Otherwise, the evidence essentially consisted of conflict-

ing testimony of medical experts. Finally, this Court can only conclude that the comments were deliberately placed before the jury to divert attention to extraneous matters. Clearly, descriptions of the decedent's funeral and grave side services and the appellant's undesirable character are not relevant to the question of the appellant's guilt. Therefore, this Court concludes that the prosecutor's improper comments were so damaging as to require reversal of the appellant's conviction.

### 2. Pre-indictment Delay

■ Next, this Court finds it necessary to address the appellant's claim that the delay between the alleged commission of the crime and the appellant's indictment warrants a dismissal of this case. The alleged commission of the crime occurred in April 1981, and the appellant was not indicted until September 2006, a delay of more than 25 years. It does not appear that the appellant moved for an evidentiary hearing to determine whether the substantial pre-indictment delay violated his due process rights. Nevertheless, it is obvious to this Court that the failure to hold such a hearing under the facts of this case constituted plain error. A substantial delay of in excess of 25 years raises the possibility that relevant and exculpatory evidence can no longer be adduced due to missing records and other physical evidence, unavailable witnesses, and fading memories. Further, such a substantial pre-indictment delay implicates a defendant's due process protections and may affect the basic fairness of the proceedings against him. Therefore, the circuit court erred in failing to hold an evidentiary hearing to determine whether the substantial pre-indictment delay violated the appellant's due process rights.

■ In light of the above, in the event that the appellant is retried below, the circuit court should hold an evidentiary hearing to determine whether the substantial pre-indictment delay violates the appellant's due process rights. Such a hearing should conform to the standards this Court adopted in Syllabus Points 2, 3, and 4 of *State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 678 S.E.2d 847 (2009), as follows:

2.  To maintain a claim that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice. To the extent our prior decisions in *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W.Va.1980), *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989), and their progeny are inconsistent with this holding, they are expressly overruled.

3.  In determining whether preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the initial burden is on the defendant to show that actual prejudice has resulted from the delay. Once that showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay. In balancing these competing interests, the core inquiry is whether the government's decision to prosecute after substantial delay violates fundamental notions of justice or the community's sense of fair play. To the extent our prior decision in *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989), and its progeny are inconsistent with this ruling, they are expressly overruled.

4.  To demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West

Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected.

### 3. Admissibility of Rule 404(b) Evidence

Finally, the appellant avers that the circuit court erred in admitting Rule 404(b)[6] evidence regarding the appellant's alleged abuse of his wife and stepchildren. This Court does not find it necessary to address this assignment of error because we reverse the appellant's conviction on other grounds. However, this Court is concerned with the potential prejudicial impact of the copious Rule 404(b) evidence admitted at the appellant's trial.[7] We are also troubled that the circuit court may not have made the necessary findings prior to admitting the Rule 404(b) evidence. With regard to the prerequisites for admitting Rule 404(b) evidence, this Court has held:

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a prepon-

---

6.  According to Rule 404(b) of the West Virginia Rules of Evidence:

    *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

7.  Jeri Williams, the appellant's wife in 1981 and Ricky, Jr.'s mother, was permitted to testify that the appellant had a "very cruel" disposition and was quite often violent. She testified that the

appellant choked her into unconsciousness and tossed her in a closet; knocked her two bottom teeth through her lip; kicked her with his combat boots on; and beat her with a belt for permitting the children to go to church. Heather Dunn, the appellant's stepdaughter, testified that the appellant was "very mean." According to Ms. Dunn, the appellant was violent toward her mother and her brother, Charles. She testified specifically that the appellant punched her brother Charles in the back for failing to pronounce words properly, and threw him into a closet door which resulted in his back being cut. Finally, Charles Hinton, the appellant's stepson, testified that the appellant was a "monster." He further testified that the appellant kicked his sister, and that his mother took quite a few beatings for the children.

derance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syllabus Point 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). It is not apparent from the record that the circuit court found by a preponderance of the evidence that the alleged acts of abuse occurred. Also, it is not clear that the court conducted the balancing required under Rule of Evidence 403. Finally, while the court recited for the jury a litany of reasons for the admission of the evidence, the court failed to explain its precise purpose with specific reference to the evidence.[8] Therefore, in the event the appellant is retried for the murder of Ricky, Jr., we urge the circuit court to conduct a full hearing on the admissibility of the Rule 404(b) evidence and to make the findings required by this Court in Syllabus Point 2 of *State v. McGinnis*.

## IV.

## CONCLUSION

For the foregoing reasons, this Court reverses the appellant's conviction for first-degree murder in the death of Ricky Alan Poore, Jr., and we remand this case to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

Justice WORKMAN dissents and reserves the right to file a dissenting opinion.

WORKMAN, Justice, dissenting:

Like the majority, I too am concerned with certain errors committed during the appellant's trial. I disagree with the majority, however, because I cannot conclude that any one of the errors, taken alone, was so prejudicial as to rise to the level of plain error. As this Court has often stated, " 'the doctrine [of plain error] is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.' Syllabus Point 4, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988)." Syl. Pt. 2, in part, *State v. Thompson*, 220 W.Va. 398, 647 S.E.2d 834 (2007). Because none of the errors in this case, standing alone, rise to the level of plain error,[1] the issues presented

---

8. The day after the testimony in question was presented, the court instructed the jury that

> you may consider that evidence not for the purpose of proving the elements of murder itself but solely for the purpose of, if you deem it credible, on the issue of motive, intent or the absence of accident or mistake relating to the charge of murder, and for that purpose only you are to give it such weight and credit as you deem it deserves.

At the close of the evidence the court instructed the jury on the Rule 404(b) evidence as follows:

> Members of the jury, you will remember that during the testimony of Jeri Williams, Heather Dunn and Chuck Hinton there was testimony concerning the prior physically abusive acts of the defendant against these witnesses and other members of the extended family prior to the act for which he now stands charged. Under

the law, this is determined to be 404(b) evidence. Under that specific rule of evidence, the evidence is admissible not for the purpose of proving the defendant did the act for which he stands charged, but rather to show the defendant acted with motive, intent, or the absence of accident or mistake. As with all other evidence, you may give this testimonial evidence such weight and credit as you believe it is entitled to receive.

1. By failing to object to the prosecutor's remarks during opening statement, and by failing to request a hearing on the issue of pre-indictment delay, the appellant in this case failed to preserve either of these issues for appeal. Ordinarily, " '[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syl. Pt. 2, *Sands*

would be addressed more appropriately in the context of habeas corpus. Therefore, I respectfully dissent.

The majority reverses and remands the case on two grounds: first, that the prosecutor committed plain error by making certain remarks during the opening statement, and second, that the circuit court was required to conduct a hearing on pre-indictment delay despite the appellant's failure to request such a hearing.

While I agree with the majority that the prosecutor's comments during the opening statement, in reading Ricky, Jr.'s obituary, discussing his funeral, and displaying pictures of his grave site, appear to have been inappropriate and possibly intended to inflame the jury, I do not agree that the prosecutor's statements regarding the appellant's unemployment and violent nature were improper. The State introduced testimony at trial as to each of these facts. This Court has always held that a prosecutor may properly address, in an opening statement, facts which will be admitted into evidence. *See, e.g., State v. Hottinger,* 194 W.Va. 716, 720, 461 S.E.2d 462, 466 (1995) ("the prosecutor should not refer to material facts which *will not be introduced at trial* during an opening statement"). Accordingly, because the State introduced evidence [2] at trial that the appellant was not employed and was violent towards other members of the family, I do not believe the remarks as to these issues in the opening statement were in error.

I would, therefore, limit the prosecutorial error in this regard to the remarks regarding Ricky, Jr.'s obituary and funeral services, and the photos displayed of the obituary and his grave site. Evidence relating to Ricky, Jr.'s obituary, funeral and grave site could not have been properly admitted and, there-

fore, the prosecutor erred in addressing them during the opening statement. As noted by the majority, however, to reverse a case on the basis of improper prosecutorial comment, four factors should be considered.

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995). When applied to just the comments relating to the obituary, funeral and grave site, these four factors do not weigh in favor of reversal in this case. Although the prosecutor's comments may have been prejudicial to the appellant, they cannot be seen as misleading the jury on any disputed issues; the fact of Ricky, Jr.'s death was never contested. Moreover, the comments and photos at issue were isolated in that they were only addressed during the opening statement and not re-addressed during the closing argument. Finally, the remarks concerning Ricky, Jr.'s obituary and the photos of his grave site were purely extraneous and, therefore, they did not impact the other evidence offered by the State to establish the appellant's guilt.

Consequently, while erroneously made, I would not find that these comments rise to the level of plain error and, therefore, they are not reversible error. Rather, I believe the appellant could more appropriately raise this error in the context of a habeas corpus

v. *Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syl. Pt. 10, *Vandevender v. Sheetz, Inc.,* 200 W.Va. 591, 490 S.E.2d 678 (1997). In its discretion, however, the Court can reverse a case on the basis of an unpreserved error if such error amounts to "plain error." "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). Accordingly, to reverse the appellant's conviction

in this case, this Court has to find that the alleged errors meet the "plain error" test.

2. To the extent that the appellant argues that some of this evidence should not have been admitted, it should have been challenged via a motion in limine, a timely objection, or through a challenge under West Virginia Rule of Evidence 404(b), in the form of a *McGinnis* hearing, which the majority correctly directs be conducted on remand.

petition arguing that his attorney's failure to object to these statements constituted ineffective assistance of counsel.

Similarly, while I agree with the majority that, given the twenty-five year delay in this case, a pre-indictment delay hearing would have been appropriate, I find no legal basis for mandating such a hearing given that the appellant did not request one. This Court's recent opinion in *State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 678 S.E.2d 847 (2009), which sets forth the standards for conducting such hearings, clarifies that the defendant bears the initial burden of proving that pre-indictment delay caused actual prejudice. *Id.* at Syl. Pt. 3, 678 S.E.2d 847. Because the defendant would bear the initial burden of proof, I find it unusual for this Court to require a trial court to conduct a pre-indictment delay hearing when the defendant has not requested such. Of course, this too could be made the subject of an ineffective assistance of counsel claim and resolved in the context of habeas corpus. Accordingly, I dissent on this basis as well.

In sum, while I agree that errors occurred in this trial, I do not join the majority in finding that such errors reach the level of plain error. Rather, given that the appellant's attorney failed to object to the prosecutor's opening statements and failed to request a pre-indictment delay hearing, the defendant could pursue, in a habeas corpus action, a new trial on the basis of ineffective assistance of counsel. *See* Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992) ("It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim."). For these reasons, I respectfully dissent.